IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| URBAIN TAH JIGGI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 18-1303-CFC |
| | ) |
| THE REPUBLIC OF CAMEROON, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

1. **Introduction.** Plaintiff Urbain Tah Jibbi, ("Plaintiff"), a citizen of The Republic of Cameroon and a permanent resident of the United States, commenced this action on August 23, 2018. (D.I. 2) He proceeds *pro se* and has been granted *in forma pauperis* status. Plaintiff filed this action alleging human rights violations and asserts jurisdiction under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq*. (D.I. 2)

2. **Background.** Plaintiff resides in Delaware. He alleges Defendant The Republic of Cameroon ("Republic of Cameroon") is carrying out torture, kidnapping, mass arson, murder, property destruction, and many other on-going human rights violations. Plaintiff alleges the Republic of Cameroon signed a "commercial deal" with Defendant Squire Patton Boggs ("Squire Patton"), a law firm located in Washington, D.C., and Defendant Mercury LLC ("Mercury"), a company located in Philadelphia, Pennsylvania, and that these Defendants are aiding and abetting the commission of human rights violations. (D.I. 2 at 3) Plaintiff alleges under 28 U.S.C. § 1605, the "commercial deal" lifts the Republic of Cameroon's immunity under the FSIA.

1

3. The Complaint alleges the United States of America signed an agreement with the Republic of Cameroon to provide military assistance to combat terrorism. The agreement provided that the military equipment was to be used only for that purpose. The Complaint does not provide the date of the agreement. The Complaint alleges the government of Cameroon has used the military equipment to kill and maim children, old women, and innocent civilians, and the weapons have been used in extrajudicial killings of thousands of people in the English speaking part of Cameroon within the space of two years. The Complaint does not provide dates of the alleged human rights violations.

4. The Complaint alleges the government of Cameroon has been able to "get away with these crimes" because it hires firms, like Defendants, to portray a clean image of the country. Plaintiff alleges that in August 2018, the government of Cameroon signed deals costing millions of dollars to lobby for the government of Cameroon and to give the "poor nation a good name." (D.I. 2 at 5) The Complaint further alleges that the millions of dollars in aid Cameroon receives from the United States is used to pay for services such as those offered by Squire Patton and Mercury.

5. The Complaint alleges that Squire Patton and Mercury were paid to paint Cameroon President Paul Biya ("Biya")[1] (who was seeking reelection) and his government in a false light to enable him to stay in power, benefit from American taxpayer money, continue to gain personally from the money, and commit human rights

---

[1] Biya was reelected to a seventh term in October 2018 and sworn in on November 6, 2018. *See* https://www.nytimes.com/aponline/2018/11/06/world/africa/ap-af-cameroon-president.html (last visited Nov. 6, 2018).

violations[2] with American-issued military equipment.  The Complaint alleges that the United States relies upon companies like Squire Patton and Mercury when making aid decisions.  It alleges that most of the aid money is embezzled but does not indicate who embezzles the money.

6. Plaintiff alleges that he is affected by the actions of the government of Cameroon, which is "being aided and abetted by Defendants." (D.I. 2 at 7)  Plaintiff alleges his property has been burned by the Army of Cameroon and his businesses have suffered from the war waged by the Cameroon Army on English speakers.  The Complaint does not indicate when Plaintiff allegedly suffered these losses.

7. For relief, Plaintiff asks the Court to order the government of Cameroon to allow U.N. investigators into the country; void the contracts with Squire Patton and Mercury, and refund the monies paid them to the people of Cameroon; and ban Defendants (presumably Squire Patton and Mercury) from entering into commercial contracts with the government of President Biya.

8. **Standard of Review.**  A federal court may properly dismiss an action sua sponte under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief."  *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013).  The Court must accept all factual allegations in a

---

[2] The Complaint alleges that the United Nations and several other international bodies have accused the government of Cameroon of gross human rights violations including genocide, and the government has denied the United Nations access to investigate these crimes.  The Complaint also alleges that several United States Congressmen have called on the government of Cameroon to stop the carnage.

3

complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

9. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

10. The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the Court must grant Plaintiff leave to amend his Complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

11. A well-pleaded complaint must contain more than mere labels and conclusions. See *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. See *Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. See *id*. at 346.

12. Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of any well-pleaded factual allegations and then determine whether those allegations plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

13. **Deficient Pleading**. As discussed above, the Complaint lacks details. It does not describe the "commercial activity" by the Republic of Cameroon, it does not clearly describe the activities of Squire Patton or Mercury, it does not provide dates of the alleged human rights violations or dates when Plaintiff's property was burned, or his businesses suffered. In addition, it is not clear if Plaintiff refers to businesses in the United States or in the Republic of Cameroon. As pled, the allegations are deficient

5

and the Court's experience and common sense lead it to recognize that the Complaint does not state facially plausible claims for relief. See *Iqbal*, 556 U.S. at 679.

14. **Foreign Sovereign Immunities Act.** The "sole basis" for United States federal courts to obtain jurisdiction over a foreign state is through the FSIA 28 U.S.C. § 1603(a)(b); see *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989). The FSIA must be applied by this Court in the action against the Republic of Cameroon. See *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983) (the statute must be applied by the district courts in every action against a foreign nation). The FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992). The FSIA establishes a default rule granting foreign sovereigns immunity from the jurisdiction of United States courts. See 28 U.S.C. § 1604; *Simon v. Republic of Hungary*, 812 F.3d 127, 135 (D.C. Cir. 2016). The baseline grant of immunity is subject to several exceptions. See 28 U.S.C. §§ 1604, 1605, 1605B, 1606, 1607; *Simon*, 812 F.3d at 135.

15. Given Plaintiff's allegations that the Republic of Cameroon "signed a commercial deal with the other two defendants, thereby lifting their immunity," it may be that Plaintiff relies upon the FISA's commercial activity exception, 28 U.S.C. § 1605(a)(2), to allow for jurisdiction over his claims against the Republic of Cameroon. Section 1605(a)(2) provides that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case-

> (2) in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

28 U.S.C. § 1605(a)(2). Due to the vague of allegations of a "commercial deal", the Court is unable to discern if the Republic of Cameroon's immunity is affected by any of the exceptions under the FSIA.

16. In addition, for purposes of the FSIA, the Court must focus on the particular conduct upon which the claims are based. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993). As alleged, the conduct complained of had no direct effect on the United States. *See Republic of Argentina*, 504 U.S. at 618 (an effect is direct if it follows as an immediate consequence of the defendant's activity). The Complaint alleges that the government of Cameroon hires firms, like Defendants (presumably Squire Patton and Mercury) to place the government in a "false light" and this allows the current president to stay in power and commit human rights violations in the Republic of Cameroon. The immediate consequence of which Plaintiff complains, are injuries due to human rights violations, including the burning of his property and his businesses (presumably in the Republic of Cameroon) and have no impact on or in the United States. As pled, the Complaint fails to establish this Court's jurisdiction over the Republic of Cameroon.

17. **Alien Tort Statute.** "The ATS is 'strictly jurisdictional' and does not by its own terms provide or delineate the definition of a cause of action for violations of international law." *Jesner v. Arab Bank, PLC*, 138 S.Ct. 1386, 1397 (2018) (citing

*Sosa v. Alvarez–Machain*, 542 U.S. 692, 713-714 (2004)). The ATS provides a district court with original jurisdiction over a civil action brought by: (1) an alien (2) for a tort, (3) that was committed in violation of the law of nations or a treaty of the United States. 28 U.S.C. § 1350.

18. Federal courts may recognize claims under the ATS based "on the present-day law of nations" that "rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th century paradigms [the Supreme Court has] recognized." *Sosa*, 542 U.S. at 725. However, under the ATS, when all relevant conduct takes place outside the United States, dismissal of the action is required based on the presumption against extraterritorial application of statutes. *See Jesner*, 138 S.Ct. at 1395 (citing *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013)). Claims could be actionable under the ATS where they "touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application." *Kiobel*, 569 U.S. at 124-25.

19. Even if this Court had jurisdiction over the Republic of Cameroon, the Complaint alleges that the alleged relevant conduct (*i.e.*, human rights violations) by the Republic of Cameroon, occurred in Cameroon. Therefore, as pled, the claims against the Republic must be dismissed.

20. **Aiding and Abetting**. The Complaint alleges that Squire Patton and Mercury are aiding and abetting the commission of human rights violations. The Complaint alleges the aiding and abetting occurred when Defendants portrayed a "clean image" of the Republic of Cameroon which allowed the Republic of Cameroon to

8

receive aid money from the United States and allowed the government to stay in power to commit human rights violations.

21. Aiding and abetting another's violation of the law of nations is within the ambit of the ATS. *See Doe v. Nestle, S.A.*, __F.3d__, 2018 WL 5260852, at *5 (9th Cir. 2018); *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 199 (5th Cir. 2017) (aiding and abetting comes within the focus of the ATS); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 185 (2d Cir. 2014). "[A] defendant may be held liable under international law for aiding and abetting the violation of that law by another when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime." *Mastafa*, 770 F.3d at 192 (other citations omitted).

22. The Court considers the allegations to determine whether Defendants' conduct of portraying a clean image helped the perpetrators commit the underlying human rights abuses. As alleged, and while not clear, it appears that Squire Patton an Mercury engaged in conduct in the ordinary course of business. The Complaint does not plausibly plead how their actions aided and abetted the alleged human rights violations, but rather makes the dubious connection that Defendants' portrayal of the Republic of Cameroon impacted the money allocated by United States to the Republic of Cameroon which allowed the government to remain in place and commit human rights violations. Common sense dictates that numerous other factors may be considered when the United States provides aid money to foreign counties. The inference that there is a causal connection between Defendants' conduct and human

rights violation is simply too tenuous to state a plausible claim for relief. Therefore, the claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

23. **Leave to Amend**. Plaintiff appears *pro se*. Since it appears plausible that he may be able to articulate a claim against defendants or name alternative defendants, he will be given an opportunity to amend his pleading. *See O'Dell v. United States Gov't*, 256 F. App'x 444 (3d Cir. 2007) (leave to amend is proper where the plaintiff's claims do claims do not appear "patently meritless and beyond all hope of redemption").

24. **Conclusion**. For the above reasons, the Court will dismiss the Complaint for failure to state claims upon which relief may be granted pursuant to U.S.C. § 1915(e)(2)(B) (ii). Plaintiff will be given leave to file an amended complaint. A separate order shall issue.

                                                                                                   _____
                                                                                                   United States District Judge

Dated: November __, 2018