IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| URBAIN TAH JIGGI, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 18-1303-CFC ) |
| THE REPUBLIC OF CAMEROON, SQUIRE PATTON BOGGS, and MERCURY LLC, | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM**

1. **Introduction.** Plaintiff Urbain Tah Jibbi, ("Plaintiff"), a citizen of The Republic of Cameroon and a permanent resident of the United States, commenced this action on August 23, 2018. (D.I. 2) He proceeds *pro se* and has been granted *in forma pauperis* status. (D.I. 4) Plaintiff filed this action alleging human rights violations and asserts jurisdiction under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq*. (D.I. 2) Upon screening, the Court dismissed the original Complaint and gave Plaintiff leave to amend. (D.I. 5, 6) Plaintiff timely filed an Amended Complaint. (D.I. 7)

2. **Background.** The Amended Complaint states that Plaintiff is an attorney, licensed to practice in Delaware where he resides. (D.I. 7 at 1) Plaintiff alleges that Defendant The Republic of Cameroon ("Republic of Cameroon") signed an agreement with Defendants law firms, Squire Patton Boggs ("Squire") and Mercury LLC ("Mercury") (together "law firms") to provides lobbying services in the United States on behalf of the Cameroon government. (*Id.*) Plaintiff alleges that Squire and Mercury

1

"assist the government of Cameroon in securing loans and aid from the United States government" and that "[m]ost of this aid is diverted and used to kill innocent civilians and burn down hundreds of thousands of property [sic] across the war zones. (*Id.*)

3. Plaintiff alleges that war broke out in Cameroon in December 2016, is ongoing, and getting worse. (*Id.*)[1] He alleges that specific dates for human rights violations cannot be provided during an ongoing war, but atrocities occur daily. (*Id.*) Plaintiff alleges that he lost all of his clients because of the war raging in Cameroon. (*Id.*) More particularly, he alleges that he has been unable to provide legal services to his clients who reside in Delaware as "a direct consequence of the war waged by the government of Cameroon, with the assistance of their lobbyists at Squire and Mercury." (*Id.*) He explains that the courts in Cameroon have been shut down, schools are no longer functioning, his clients in Delaware need the services of the courts in Cameroon, and most need academic services for their "US children who study abroad in Cameroon." (*Id.*)

4. Plaintiff alleges that the contracts at issue were signed in the United States for services being performed in the United States. (*Id.*) He alleges the "atrocities of Cameroon are being carried out [in Cameroon] and the direct consequence" is that Plaintiff, a United States permanent resident, is "being affected by the atrocities while physically" in the United States. (*Id.*) According to Plaintiff, the foregoing circumstances make the FSIA applicable. He also alleges the ATS applies because he has suffered loss of income in the United States. (*Id.*) Plaintiff states that

---

[1] In one sentence of his Amended Complaint Plaintiff states that war started in 2016; in another he states it started in 2017.

2

if the Court "will be patient enough and not hurriedly dismiss [the] lawsuit, it will be proven at discovery that nothing sinister happens in Cameroon or other dictatorships in Africa without the assistance of lobbying firms in the USA." (*Id.* at 2) For relief, Plaintiff seeks $150,000 for loss of income, angst, and hardship suffered by the direct impact of [defendants'] actions. (*Id.*)

5. **Standard of Review**. A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Generally, when a plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted). Plaintiff, however, alleges that he is "a licensed Foreign Legal Consultant and member of the Delaware State Bar" (*see* D.I. 7 at 1), and the Court does not extend the indulgence of the *pro se* liberal construction rule to *pro se* litigants who, like Plaintiff, are also attorneys. *See Tatten v. Bank of Am. Corp.*, 562 F. App'x 718, 720 (10th Cir. 2014) (citing *Committee on the Conduct of Attorneys v. Oliver*, 510 F.3d 1219, 1223 (10th Cir. 2007)).

6. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a

3

court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).

7. The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief can be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the Court must grant Plaintiff leave to amend his Complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

8. A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

9. Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and

4

(3) assume the veracity of any well-pleaded factual allegations and then determine whether those allegations plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

10. **Discussion**. The Amended Complaint did not cure Plaintiff's pleading defects. As pled, the allegations are deficient and the Court's experience and common sense lead it to recognize that the Amended Complaint does not state facially plausible claims for relief. *See Iqbal*, 556 U.S. at 679

11. **Foreign Sovereign Immunities Act**. As discussed in the initial screening order (*see* D.I. 5, 6), the "sole basis" for United States federal courts to obtain jurisdiction over a foreign state is through the FSIA 28 U.S.C. § 1603(a)(b); *see Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989). The FSIA must be applied by this Court in the action against the Republic of Cameroon. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983) (the statute must be applied by the district courts in every action against a foreign nation). The FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992). The FSIA establishes a default rule granting foreign sovereigns immunity from the jurisdiction of United States courts. *See* 28 U.S.C. § 1604; *Simon v. Republic of Hungary*, 812 F.3d 127, 135 (D.C. Cir.

2016). Indeed, "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). The Amended Complaint does not state, must less suggest, if the Republic of Cameroon's grant of immunity is subject to any of the statutory exceptions, see 28 U.S.C. §§ 1604, 1605, 1605B, 1606, 1607, and the Court will not hazard a guess. As pled, the Republic of Cameroon is immune from the jurisdiction of United States Courts.

12. **Alien Tort Statute**. "The ATS is 'strictly jurisdictional' and does not by its own terms provide or delineate the definition of a cause of action for violations of international law." *Jesner v. Arab Bank, PLC*, 138 S.Ct. 1386, 1397 (2018) (citing *Sosa v. Alvarez–Machain*, 542 U.S. 692, 713-714 (2004)). The ATS provides a district court with original jurisdiction over a civil action (1) brought by an alien (2) for a tort (3) that was committed in violation of the law of nations or a treaty of the United States. 28 U.S.C. § 1350.

13. Federal courts may recognize claims under the ATS based "on the present-day law of nations" that "rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th century paradigms [the Supreme Court has] recognized." *Sosa*, 542 U.S. at 725. However, under the ATS, when all relevant conduct takes place outside the United States, dismissal of the action is required based on the presumption against extraterritorial application of statutes. *See Jesner*, 138 S.Ct. at 1395 (citing *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013)). Claims could be actionable

6

under the ATS where they "touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application." *Kiobel*, 569 U.S. at 124-25.

14. **Aiding and Abetting**. The Amended Complaint alleges that Squire and Mercury are aiding and abetting the commission of crimes against humanity by the government of Cameroon. (D.I. 7 at 2) The Amended Complaint alleges this occurred when Squire and Mercury signed an agreement with the government of Cameroon in 2017 to provide lobbying services in the United States to assist the government in securing loans and aid from the Untied States government. (*Id.*) The Amended Complaint alleges, "[m]ost of the aid is diverted and used to kill innocent civilians and burn down hundreds of thousands of property across the war zones." (*Id.*)

15. Aiding and abetting another's violation of the law of nations is within the ambit of the ATS. *See Doe v. Nestle, S.A.*, 906 F.3d 1120, 1125 (9th Cir. 2018); *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 199 (5th Cir. 2017) (aiding and abetting comes within the focus of the ATS); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 185 (2d Cir. 2014). "[A] defendant may be held liable under international law for aiding and abetting the violation of that law by another when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime." *Mastafa*, 770 F.3d at 192 (other citations omitted).

16. The Court considers the allegations to determine whether the law firms' conduct of assisting the government of Cameroon in securing loans and aid from the

7

United States helped the government of Cameroon commit crimes against humanity as alleged by Plaintiff. As alleged, and while not clear, it appears that Squire and Mercury engaged in conduct in the ordinary course of business. Similar to the original Complaint, the Amended Complaint does not plausibly plead how the law firms' actions aided and abetted the alleged crimes against humanity. Rather, the allegations are conclusory and make a leap from assisting in securing loans and aid to aiding and abetting the commission of crimes against humanity with no facts connecting the two. As previously stated, "common sense dictates that numerous other factors may be considered when the United States provides aid money to foreign counties." (D.I. 5 at ¶ 22) The inference that there is a causal connection between the law firms' conduct and crimes against humanity is too tenuous to state a plausible claim for relief. Therefore, the claims will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

17. **Conclusion.** For the above reasons, the Court will dismiss the Amended Complaint based upon immunity from this Court's jurisdiction and as legally frivolous pursuant to U.S.C. § 1915(e)(2)(B)(i). The Court finds amendment futile as Plaintiff, an attorney, was given leave to amend to cure his pleading defects, but failed to do so. See Foman v. Davis, 371 U.S. 178, 182 (1962) (The court may curtail or deny a request for leave to amend where there is "repeated failure to cure deficiencies by amendments previously allowed" and there would be "futility of amendment."). A separate order shall issue.

<span style="text-align:right">_____
UNITED STATES DISTRICT JUDGE</span>

May 15, 2019
Wilmington, Delaware